1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS S. LOPEZ, | ) 1:11-cv-00310 GSA |
|       Plaintiff, | ) **ORDER REGARDING PLAINTIFF'S** |
| v. | ) **SOCIAL SECURITY COMPLAINT** |
| MICHAEL ASTRUE, Commissioner of Social Security, | ) |
|       Defendant. | ) |
| | ) |

## BACKGROUND

Plaintiff Carlos S. Lopez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 10 & 11)

1

## FACTS AND PRIOR PROCEEDINGS[2]

In July 2006, Plaintiff filed an application for supplemental security income benefits, alleging disability beginning January 1, 1999. *See* AR 135-141. Plaintiff's application was denied initially and on reconsideration. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 107-113. ALJ Theodore T. N. Slocum held a hearing and issued an order denying benefits on January 13, 2009, finding Plaintiff was not disabled. AR 20-27. On January 8, 2011, the Appeals Council denied review. AR 1-3.

**Hearing Testimony**

ALJ Slocum held a hearing on August 20, 2008, in Chico, California. Plaintiff appeared and testified. He was represented by attorney Shaneela Khan. Vocational Expert ("VE") Michael L. Stinson also testified, as did third party witness Raphael Serrano Lopez. AR 35-103.

### *Plaintiff's Testimony*

Plaintiff was forty-seven years old on the date of the hearing. He lived with his parents at a rental home in Willows, California. AR 39-40. At five feet, seven inches tall, Plaintiff weighs 164 pounds and is right handed. AR 41. He currently receives welfare and food-stamp benefits of about $446 a month. AR 44-45. He no longer has a driver's license. AR 55-56.

Raised in San Jose, Plaintiff completed the tenth grade, dropping out of high school to work. AR 40-41. He can read and write, but not well. AR 81. Plaintiff has never served in the military. AR 41. He last worked for a couple months in 1998 for Properties Union passing out flyers. AR 41, 44. He left that position due to pancreatitis; he was drinking alcohol at the time. AR 41-42. He has never participated in an alcohol rehabilitation program, but when asked when he was last "drunk," Plaintiff indicated it had been about four years. AR 42. He no longer drinks alcohol as a result of the pancreatitis. AR 52.

---

[2]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

When he was asked to identify the longest job he has held within the fifteen year period preceding his application for benefits, Plaintiff indicated that in 1991 he worked for Sundance Builders Company as a welder.  He held the position for about year and it is the longest he has ever held a job.  AR 42-43.  He left because of a back injury; a related workers' compensation claim resulted in a settlement of $13,000.  AR 43.  Prior to that position, Plaintiff worked as an apprentice at a vehicle upholstery shop in 1994.  He "couldn't handle it" because of his back.  AR 44.  He has not looked for work since 1998.  AR 44.

Plaintiff's primary care physician is Dr. Garrison at Glenn Medical.  AR 45.  About five months ago, he underwent physical therapy on his back for about a month.  AR 45.  The last x-ray, CT scan or MRI performed on his back was in 1992.  AR 45.  He has never seen an orthopedic surgeon or neurosurgeon.  AR 46.  The back pain he feels has stayed the same since the time of his injury.  Although his doctor has discussed obtaining an x-ray or MRI of Plaintiff's spine, his medical coverage will not cover either.  AR 56.  As a result of his back pain, Plaintiff has difficulty sitting for prolonged periods of time.  He estimated he can sit for about ten to fifteen minutes before he needs to move around.  AR 64.  He also has difficulty with prolonged standing or walking, estimating he could walk about fifteen to twenty minutes before needing to sit or lie down.  AR 64.  The heaviest weight Plaintiff can lift and carry is twenty pounds.  AR 64.

When Plaintiff was asked whether he could work if he were given a job that permitted him to sit and stand as necessary, and lifting was not an issue, he said that he "wouldn't be able to show up sometimes" as a result of his symptoms.  AR 67.  More particularly, Plaintiff indicated that sometimes he is unable to get out of bed.  AR 67-68.  This happens about twice a week, sometimes more.  AR 68.

In 1999, Plaintiff was diagnosed with hepatitis.  At the time of that diagnosis, he was using methamphetamine.  He no longer uses drugs and last used about five years ago.  AR 46.  He has not received treatment for hepatitis because of a lack of medical coverage.  His symptoms

1  are fatigue, neuropathy or blurry vision, his hands and feet tingle and get numb, and he has

2  difficulty grasping items and standing or walking.  AR 57.  His whole body shakes.  AR 58.  He

3  takes prescription medication to treat the neuropathy, but it does not alleviate the symptoms

4  completely.  AR 58.

5        Plaintiff has trouble controlling his glucose intake as a result of his pancreas.  AR 52.  He

6  has told his physician that his blood sugar is too high or too low because his pancreas "won't

7  accept insulin sometimes."  AR 54.  He testified that although he maintains a good diabetic diet

8  and takes his medications as prescribed, his diabetes is not always under control.  AR 61.

9        For the previous year, Plaintiff has required assistance at home.  AR 59-61.  He feels

10  stomach pain almost every day and passes out about every other day.  AR 59.  He is assisted by

11  his brother with cooking and shopping.  AR 62.  His brother will also remind him to take his

12  medications and will sometimes administer insulin.  AR 63.  When he was asked how many bad

13  days he has in a month, Plaintiff replied about two days a week are bad days.  He could not

14  however describe a bad day because he "can't remember sometimes."  AR 63.

15        Plaintiff is being treated for depression by a licensed clinical social worker.  He has seen

16  her for the past year and a half.  He has never been treated by a psychiatrist or psychologist.  AR

17  53, 61-62.

18        Plaintiff was scheduled to see a neurologist about one month after the hearing.  AR 76.

19  He has seen a neurologist before but could not recall when.  AR 76.  Plaintiff testified he takes

20  prescription Tegretol for epilepsy.  Dr. Garrison prescribed the medication about two years ago.

21  AR 78.

22        When he was asked whether he had ever been convicted of a felony, Plaintiff replied that

23  he had, but he was not certain as to the number of those convictions.  He believed his convictions

24  to be "[n]o more than four."  AR 47.  He was convicted in 1983 of grand theft for stealing a car

25  stereo.  He served three years in prison.  AR 47-48.  Thereafter, he suffered about three felony

26  convictions involving drugs.  AR 48.  He has served time in Solano and San Quentin.  AR 49-50.

27

28

*Rafael Lopez*

Plaintiff's brother Rafael Serrano Lopez also testified.   He was thirty-six years old on the date of the hearing.  Mr. Lopez graduated high school and works as a supervisor at a cannery. AR 70-71.  Mr. Lopez leaves the house at 2 p.m. to begin his shift at work so he spends the morning in Plaintiff's company.  AR 73.  Once he leaves the house, his brother Martin takes over and provides Plaintiff further care.  AR 73.

Mr. Lopez lives in the same house as his brother.  When he was asked what types of things he helps Plaintiff with, Mr. Lopez indicated that sometimes Plaintiff's "bones are aching," so he will take him breakfast, or administer his insulin injection if Plaintiff is too weak.  Mr. Lopez also does Plaintiff's laundry and his grocery shopping.  AR 71.  He "set[s] up" his medications for him.  He has been doing these things for his brother for two or three years.  AR 72.

Mr. Lopez does not believe his brother's condition is improving.  He has noticed that his brother has difficulty with comprehension.  AR 72.  If Plaintiff's blood sugar is low, he looks as if "he's in space or something . . . just looks out of it."  AR 72.  He wakes in the middle of the night constantly coughing.  AR 72.  Mr. Lopez has heard Plaintiff "grunting like" and asked him what was wrong; Plaintiff replied that his bones ache.  AR 73-74.

When he was asked whether he had ever seen his brother faint, Mr. Lopez indicated that he has seen it.  He will check Plaintiff's blood sugars and inject him with insulin.  Three or four months ago, Plaintiff was treated at a hospital in Willows because his sugars were higher than the meter could register.  AR 74-75.

If his brother is having a good day, Mr. Lopez indicated that he will get up and make himself breakfast.  AR 72-73.

***VE Stinson***

VE Stinson identified Plaintiff's past relevant work as: a tire repairer, DOT 915.684-010, semi-skilled with an SVP[3] of three, heavy exertion with frequent reaching, handling, fingering and feeling; apprentice automobile upholsterer, DOT 780.381-014, medium and skilled with an SVP of six, frequent reaching, handling, and fingering; and apprentice welder, DOT 810.384-010, heavy and skilled with an SVP of five, constant reaching and handling, frequent fingering, and insignificant feeling  AR 82-84.  Additionally, Plaintiff worked as a hand bill distributor or sandwich board carrier for a carpenter's union, DOT 299.687-014, light and unskilled with an SVP of one, occasional reaching, handling and fingering.  AR 84-86.

In the first hypothetical, the VE was asked to assume a hypothetical person of the same age, education and work experience as Plaintiff, with the ability to lift twenty-five pounds frequently and fifty pounds occasionally, stand, walk or sit for six hours in an eight-hour workday, with the unlimited ability to push, pull or operate hand or foot controls, without postural, visual, or communicative limitations, however the individual should avoid even moderate exposure to hazards such as moving machinery and unprotected heights.  AR 86-89.  VE Stinson indicated such an individual could perform Plaintiff's past work as a hand bill distributor or sandwich board carrier.  AR 89-90.

Bearing the same hypothetical individual in mind, the VE was asked whether there were other jobs in the region that the individual could also perform.  VE Stinson indicated such an individual would be capable of work as a cashier, light with an SVP of two, DOT 211.462-010, with 1,202 positions available regionally, 114,879 positions available in California, and 1,024,758 positions available nationwide.  AR 90.  Additionally, the individual could work as a fast food prep worker, light with an SVP of two, DOT 311.472-010, with 493 positions available regionally, 33,937 positions statewide, and 380,924 positions nationwide.  AR 91.  Finally, the individual could also perform the work of a telemarketer, sedentary with an SVP of three, DOT

---

[3]"SVP" refers to specific vocational preparation.

1  299.357-014, with 241 positions available regionally, 25,580 positions available statewide, and

2  315,310 positions available nationwide.  AR 91.

3       In a hypothetical question posed by Plaintiff's counsel, the VE was asked to assume the

4  same individual as that posed in the previous hypothetical but add that the individual does not

5  have the ability to perform basic math skills.  AR 93.  The VE indicated such an individual

6  would be unable to perform the job of a cashier or retail sales clerk.  AR 93.  Further, a limitation

7  regarding fingering would result in a seventy-five percent erosion to the telemarketer position.

8  AR 94-96.

9       In another hypothetical posed by Plaintiff's counsel, VE Stinson was asked to assume the

10  hypothetical individual was limited to unskilled, less than sedentary work.  The VE indicated the

11  world of work would be closed to such an individual.  AR 96.

12  **Medical Record**

13       The entire medical record was reviewed by the Court.  AR 213-461.  The medical

14  evidence will be referenced below as necessary to this Court's decision.

15  **ALJ's Findings**

16       Using the Social Security Administration's five-step sequential evaluation process, the

17  ALJ determined that Plaintiff did not meet the disability standard.  AR 20-27.

18       More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful

19  activity since July 20, 2006, the application date.  AR 22.  Further, the ALJ identified diabetes

20  mellitus, peripheral neuropathy, chronic pancreatitis, and asymptomatic hepatitis as severe

21  impairments.  AR 22.  Nonetheless, the ALJ determined that the severity of the Plaintiff's

22  impairments did not meet or exceed any of the listed impairments.  AR 22-23.

23       Based on his review of the entire record, the ALJ determined that Plaintiff has the

24  residual functional capacity ("RFC") to perform medium work with a limitation to avoid even

25  moderate exposure to hazards working around machinery or heights.  AR 23-26.

26

27

28  7

1    Next, the ALJ determined that Plaintiff was capable of performing his past relevant work

2    as a hand bill distributor.  Further, the ALJ determined that Plaintiff's past work did not require

3    the performance of work related activities precluded by the RFC.  AR 26.  Alternatively, the ALJ

4    found that Plaintiff could also perform the work of a cashier, fast food prep worker, or

5    telemarketer.  AR 26-27.  Therefore, the ALJ found Plaintiff was not disabled.  AR 27.

6                                    **SCOPE OF REVIEW**

7        Congress has provided a limited scope of judicial review of the Commissioner's decision

8    to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

9    this Court must determine whether the decision of the Commissioner is supported by substantial

10   evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

11   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

12   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

13   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

14   401.  The record as a whole must be considered, weighing both the evidence that supports and

15   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

16   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

17   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

18   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

19   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

20   substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

21   Cir. 1987).

22                                        **REVIEW**

23       In order to qualify for benefits, a claimant must establish that he is unable to engage in

24   substantial gainful activity due to a medically determinable physical or mental impairment which

25   has lasted or can be expected to last for a continuous period of not less than twelve months.  42

26   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

27

28                                            8

such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION

Plaintiff claims three errors on appeal: (1) that the ALJ erred in failing to properly assess his treating physician's opinion in light of the longitudinal record and subsequent submission to the Commissioner; (2) that the ALJ's rationale for rejecting the testimony of Plaintiff and a third party is insufficient; and (3) that the ALJ's determination at step four is not supported by substantial evidence. (*See* Doc. 16.)

### *The Opinion of the Treating Physician*

Plaintiff contends the ALJ erred in failing to properly assess the treating physician's long term treating opinion in light of the longitudinal record and subsequent submission to the Commissioner. (Doc. 16 at 14-18.) The Commissioner contends that Plaintiff's citations in this regard are to evidence not before the ALJ, and thus there can be no error. Further, the Commissioner contends that the opinion of Plaintiff's treating physician made available was considered and properly rejected by the ALJ. (Doc. 23 at 9-13.)

### Applicable Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d

1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another

doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722

F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the

opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

*Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating

physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion

of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

can only be rejected for specific and legitimate reasons that are supported by substantial evidence

in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

that justifies the rejection of the opinion of either an examining physician or a treating physician.

*Pitzer v. Sullivan*, 908 F.2d at 506 n. 4; *Gallant v. Heckler*, 753 F.2d at 1456.  In some cases,

however, the ALJ can reject the opinion of a treating or examining physician, based in part on the

testimony of a nonexamining medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55

(9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.

1995).  For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a

treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to

reject the opinions of Magallanes's treating physicians . . .."  *Magallanes*, 881 F.2d at 752.

Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also

relied on laboratory test results, on contrary reports from examining physicians, and on testimony

from the claimant that conflicted with her treating physician's opinion.  *Id*. at 751-52.

10

**Summary of Dr. Garrison's Medical Opinions**

*Opinion Considered by the ALJ*

In December 2007, Dr. Garrison completed a two-page form directed to the Glenn County Human Resource Agency. AR 334-335. The doctor opined that Plaintiff was incapacitated and unable to work, but did not indicate an onset date. AR 334. The diagnoses were identified as diabetic neuropathy, back pain, and chronic pancreatitis. AR 334. With specific regard to functional limitation, Dr. Garrison checked "Not at all" in response to whether Plaintiff could perform manual labor, perform sedentary labor, participate in classroom training, or attend adult school six hours a day. AR 334. The doctor indicated the duration of Plaintiff's incapacity was permanent. AR 335.

*Opinion Considered by the Appeals Council*

In a Physical Residual Functional Capacity Questionnaire form dated April 16, 2009, Dr. Garrison indicates Plaintiff's prognosis is poor with regard to the diagnoses of diabetes mellitus, chronic pancreatitis, and diabetic neuropathy. The doctor noted pain in Plaintiff's feet continuously, and the sporadic abdominal pain. AR 457. Dr. Garrison indicated Plaintiff's symptoms will frequently interfere with his ability to maintain attention and concentration. AR 458. Plaintiff's ability to deal with work related stress was identified as a moderate to marked limitation. AR 458-459. The doctor indicated Plaintiff could continuously sit and stand for fifteen to twenty minutes. AR 459. In response to the inquiry of how long his patient could sit and stand or walk in total during an eight-hour workday, Dr. Garrison wrote that Plaintiff "reports spending most of day on bed," then selected the "less than 2 hours" box on the form. AR 459. In response to whether his patient needs a job that permits shifting positions at will, and whether his patient would need to take unscheduled breaks on occasion, Dr. Garrison circled "Yes." AR 459. The doctor believed his patient was capable of occasionally lifting and carrying twenty pounds and frequently lifting and carrying ten pounds. AR 459. Dr. Garrison estimated Plaintiff would have less than one bad day per month based upon his impairments. The doctor

11

1  concluded by indicating Plaintiff's "symptoms have been going on for years - the neuropathy is

2  getting worse."  AR 461.

3  **ALJ Slocum's Findings**

4  The ALJ found as follows:

5  > As for the opinion evidence, the opinion by the physicians at state agency
  are given controlling weight, as it is consistent with the objective findings of the

6  > record as a whole.  The opinion by Dr. Garrison dated December 5, 2007, that the
  claimant is "not at all" able to perform even sedentary work, or other activities,

7  > including attending adult school, is not afforded weight as it is based solely on the
  claimant's subjective report to Dr. Garrison as noted in his treating records,

8  > including minimal clinical findings.

9  AR 26, internal citations omitted.

10  ALJ Slocum offered specific and legitimate reasons to discount the contradicted opinion

11  of Plaintiff's treating physician in favor of the state agency physicians; namely, inconsistency

12  with the record as a whole, reliance upon Plaintiff's subjective reports, and a lack of clinical

13  findings.  All are proper reasons to afford Dr. Garrison's opinions little weight.  *See Morgan v.*

14  *Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion

15  based to a large extent on claimant's own accounts of symptoms and limitations may be

16  disregarded where those complaints have been properly discounted); *Magallanes v.* Bowen, 881

17  F.2d at 751 (a lack of supporting clinical findings is a valid reason for rejecting a treating

18  physician's opinion); *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002) (an ALJ may also

19  reject the treating physician's opinion because it was based on the claimant's discredited

20  subjective complaints); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (same).  Here, as in

21  *Magallanes*, the ALJ also relied on other evidence, including laboratory test results and objective

22  findings revealing largely normal findings to discount Dr. Garrison's opinion in favor of those

23  opinions offered by the state agency physicians.  *Id*. at 751-52.

24  ALJ Slocum did not err by affording Plaintiff's treating physician's opinion little weight.

25  Thus, the ALJ's findings in this regard are supported by substantial evidence and are free of legal

26  error.

27

28  12

**Medical Evidence Submitted to Appeals Council**

ALJ Slocum did not consider nearly one hundred additional pages of medical evidence in making his disability determination because that evidence was submitted after the administrative hearing and directly to the Appeals Council.[4]  *See* AR 377-461.

The regulations explain Appeals Council review when new and material evidence is submitted:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b).

Here, the Appeals Council considered the additional evidence submitted by Plaintiff and found no reason under the rules to review the ALJ's decision.  *See* AR 1-5.  In addition, this Court must consider evidence added to the record by the Appeals Council even where that evidence was not before the ALJ.  *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). Pursuant to the provisions of Title 42 of the United States Code section 405(g), a case may be remanded to the Secretary if the new evidence submitted is material, and there is good cause for the failure to incorporate it into the record.  In order to be "material," the new evidence must be probative of the claimant's condition as it existed during the relevant time period - on or before the administrative hearing.  *Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 511 (9th Cir. 1987).  In addition, the claimant must prove to the reviewing court's satisfaction that there exists a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him."  *Booz v. Secretary of Health and*

---

[4]ALJ Slocum did leave the record open to allow for Plaintiff's counsel to submit this additional medical evidence referred to.  *See* AR 77, 96-103.  Nevertheless, the materials were provided directly to the Appeals Council more than three months after the ALJ's decision, and eight months after the administrative hearing.

1    *Human Services*, 734 F.2d 1378, 1380 (9th Cir. 1984). The good cause requirement is satisfied if

2    the claimant could not have obtained the medical evidence at the time of the administrative

3    proceeding, even though the evidence surfaces after the Secretary's final decision. *See Embry v.*

4    *Bowen*, 849 F.2d 418, 423-24 (9th Cir. 1988); *Booz*, 734 F.2d at 1380.

5        In this case, the evidence proffered was insufficient to warrant a remand by the Appeals

6    Council. Likewise, this Court finds it is not material because there is little chance that the

7    evidence would have changed the outcome of the ALJ's determination. It is merely more of the

8    same. Hence, this Court has considered the new medical evidence presented to the Appeals

9    Council and declines to remand the case.

10       It is important to note that following a review of the entire record, this Court finds no

11    error. Notably too, while Dr. Garrison did not expressly find Plaintiff to be a malingerer, the

12    record plainly reveals the doctor questioned Plaintiff's motivations regarding his attempts to

13    obtain disability benefits.

14       ***The ALJ's Credibility Findings***

15       Plaintiff contends the ALJ erred with regard to his assessments of the credibility of both

16    Plaintiff and his brother, Rafael Serrano Lopez. (Doc. 16 at 18-23.) The Commissioner

17    contends the ALJ properly found Plaintiff was not credible. (Doc. 23 at 13-14.) However, the

18    Commissioner failed to address the issue of credibility as it relates to the third party witness.

19       A two-step analysis applies at the administrative level when considering a claimant's

20    subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the

21    claimant must produce objective medical evidence of an impairment that could reasonably be

22    expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the

23    claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the

24    claimant's testimony regarding the severity of his symptoms only if he makes specific findings

25    that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which

26    testimony is not credible and what evidence suggests the complaints are not credible." *Mersman*

27

28                          14

1   *v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack

2   of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it

3   impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial

4   evidence"); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the

5   individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

6   statements and reasons for that weight").

7        An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v.*

8   *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's

9   reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

10  testimony by the claimant that appears less than candid, unexplained or inadequately explained

11  failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily

12  activities, claimant's work record, or the observations of treating and examining physicians.

13  *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).  "An ALJ is not

14  'required to believe every allegation of disabling pain' or other non-exertional impairment."  *Orn*

15  *v. Astrue*, 495 F.3d at 635, citation omitted.

16       The first step in assessing Plaintiff's subjective complaints is to determine whether

17  Plaintiff's condition could reasonably be expected to produce the pain or other symptoms

18  alleged.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, the ALJ found that

19  Plaintiff had the severe impairments of diabetes mellitus, peripheral neuropathy, chronic

20  pancreatitis, and asymptomatic hepatitis.  AR 22.  ALJ Slocum found that Plaintiff's "medically

21  determinable impairment could reasonably be expected to cause the alleged symptoms," but that

22  Plaintiff's statements concerning "the intensity, persistence and limiting effects of these

23  symptoms are not credible to the extent they are inconsistent with the above residual functional

24  capacity assessment."  AR 24.  This finding satisfied step one of the credibility analysis.  *Smolen*

25  *v. Chater*, 80 F.3d at 1281-1282.

26

27

28                                    15

"Despite the inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working." *Fair v. Bowen*, 885 F.2d at 601. It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings. *Id*. "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id*., citing *Magallanes v. Bowen*, 881 F.2d at 755. The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony. *Id*. at 602. However, an ALJ cannot be required to believe every allegation of disabling pain. "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain." *Id*. at 603.

Specifically here, ALJ Slocum made the following findings:

The claimant's brother Rafael Serrano Lopez also testified. He said that he lived with the claimant. He said that some times the claimant cannot get out of bed because his bones are achy and he will bring him breakfast. He said that sometimes he gives him his insulin shots. He said that he will get his groceries, his medications, and do his laundry. He said he has been doing this for two to three years. He said that he is not getting any better, and sometimes he looks spacey. He said that he coughs and that his bones ache. He said that he has seen him faint and injected him with insulin.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

In terms of the claimant's alleged diabetes, pancreatitis and hepatitis, the claimant has a history of diabetes mellitus type 2 with variable control. He has chronic pancreatitis which has been stable since September 2006. Although the claimant has apparently been diagnosed with hepatitis, the medical records show no symptoms from hepatitis, neither is he receiving any treatment for hepatitis. On July 9, 2008, he was referred to Lawrence Highman, M.D., for his complaints of GERD and abdominal pain. The examination was within normal limits. He was to be scheduled for an endoscopy, but there was no follow-up.

Regarding the claimant's diabetes, the record is abundantly clear that the claimant lacks adherence to the medical regimen laid out by his physician. At the diabetic clinic on September 15, 2006, his blood sugar was 369, and he was given Humalog at the clinic, for which he injected himself. The nurse asked him to remain at the clinic to be monitored. However, when she returned 15 minutes later, he had left, without notifying any staff of his departure.

After prescribing Humalog and Glucophage, on October 16, 2006, Dr. Garrison voiced surprise that the claimant's blood sugar levels were not controlled under the regimen, and questioned whether he was not adhering to his diet or if something else was going on. Humalog was increased and adjusted. November 9, 2006, blood sugars were down to an acceptable level.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

16

On December 22, 2006, the claimant reported he was going to Mexico for 2-3 weeks. . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The claimant has been generally non-compliant in his diabetic medical regimen despite numerous incidents of his physician and staff educating him. Despite poor[ly] controlled diabetes mellitus, the record shows that he is without significant complications. . . .

*The claimant's and the witness's testimonies have been considered.* The allegations regarding his pain symptoms and physical functional limitations are not fully credible. The claimant has alleged extreme limitations in standing, walking and in [] his lack of activities. As show above, the record of evidence does not support limitations in standing, walking or sitting. His description of the severity of pain and lack of function is so extreme as to appear implausible. *There is no evidence for what he and the witness describe as "spacey."* There is no diagnosis or evidence of a seizure disorder. While he has been prescribed Tegretol, all evidence points to this being prescribed for neuropathic pain and not seizure disorder. At nearly every office visit, the claimant is described as fully oriented and in no acute distress.

Further, despite the allegations of symptoms and limitations preventing all work, the record reflects that the claimant went on a trip to Mexico, for at least three weeks, since his alleged onset date, and he did not return to his physician until ten months later. Although a vacation and disability are not mutually exclusive, the claimant's decision to go on vacation suggests that the alleged symptoms and limitations may have been overstated. . . .

AR 24-26, emphasis added & internal citations omitted.

Contrary to Plaintiff's assertions, the ALJ provided a number of specific reasons for discrediting Plaintiff's testimony, and identified specific testimony or evidence related thereto. ALJ Slocum noted Plaintiff's non-compliance with the medical regimen, a legitimate consideration. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ may properly rely on failure to follow a prescribed course of treatment); *Fair v. Bowen*, 885 F.2d at 603-04 (same); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (lack of treatment a proper factor used to evaluate credibility). The ALJ also considered the fact the medical records indicate Plaintiff's diabetes symptoms improved with prescription medications when the regimen was complied with. This too is a proper consideration in assessing credibility. *Warre Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are effectively controlled with medication are not disabling). The ALJ also noted the objective medical evidence regarding Plaintiff's physical complaints did not fully support his subjective

1    complaints.  Again, this was a proper consideration.  *See Tidwell v. Apfel*, 161 F.3d 599, 601-602

2    (9th Cir. 1998) (finding a mild or minor medical condition with all other tests reporting normal

3    provides a basis for rejecting claimant's testimony of severity of symptoms); *Johnson v. Shalala*,

4    60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence

5    supports a rejection of a claimant's credibility).  Finally, ALJ Slocum noted that Plaintiff went on

6    a three-week vacation to Mexico, finding such travel could indicate Plaintiff's "alleged

7    symptoms and limitations may have been overstated" (AR 26).  This Court finds that this too is a

8    proper consideration in a determination regarding credibility.  *See Light v. Soc. Sec. Admin.*, 119

9    F.3d at 792.

10          In any event, the ALJ gave multiple reasons for discounting Plaintiff's testimony.  Even

11   were one reason relied upon by the ALJ in his credibility determination held to be error, any error

12   was harmless.  *See Carmickle v. Commissioner of Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th

13   Cir. 2008) (*citing Batson v. Comm. of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)

14   ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . .

15   credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility]

16   conclusion' such is deemed harmless and does not warrant reversal").

17          Lay witness testimony as to a claimant's symptoms is competent evidence which the

18   Commissioner must take into account.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The

19   ALJ may reject such testimony if he does so expressly, in which case "he must give reasons that

20   are germane to each witness." *Id.*  The ALJ need not discuss lay witness testimony that pertains

21   to whether or not an impairment exists. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996).

22   These medical diagnoses are beyond the competence of lay witnesses and therefore do not

23   constitute competent evidence.  20 C.F.R. § 404.1513(a).  However, once an impairment has

24   been established by medical evidence, the extent of the diagnosed impairment may be testified to

25   by the lay witnesses.  20 C.F.R. § 404.1513(e); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

26   1987).

27

28                                                          18

Here, while the findings could have been written more plainly, it is clear to this Court that the ALJ considered the third party statement of Plaintiff's brother and properly discounted it.  As recently explained in *Molina v. Astrue*, ___ F.3d ___, 2012 WL 107637 (9th Cir. Apr. 2, 2012):

> Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se.

*Id*. at *10.  A review of the record reveals Mr. Lopez's testimony (AR 70-74) did not describe any limitations beyond that which Plaintiff himself described, which the ALJ discussed at length and properly rejected as noted above.  *See Molina v. Astrue*, 2012 WL 107637 at *12.

In sum, the ALJ's findings regarding credibility are supported by substantial evidence and are free of legal error.

### Step Four Determination

Lastly, Plaintiff contends the ALJ erred at step four when he found that Plaintiff could return to his past relevant work as a hand bill distributor because that work did not amount to substantial gainful activity.  (Doc. 16 at 23-26.)  The Commissioner contends no error occurred, and further argues that assuming the ALJ did err, any error is harmless.  (Doc. 23 at 14.)

### Legal Standard Applicable

At step four, the plaintiff has the burden of showing that he is no longer able to perform his past relevant work. *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (citing *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001)).  The step four determination involves a comparison between the demands of the claimant's former work and his present capacity. *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986).  Plaintiff cannot merely show that he is incapable of performing the particular job he once performed; he must prove that he cannot return to the same type of work. *Id*. at 798.  If Plaintiff is unable meet his burden, that burden remains with him rather than shifting to Secretary to proceed with step five. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  Although there are circumstances where VE testimony is necessary at step

1    five, it is not required at step four.  *Id.* (explaining that when the burden remains with the

2    claimant at step four, VE testimony is useful but not required).

3                              **Findings Regarding Past Work**

4            ALJ Slocum found as follows:

5                In comparing the claimant's residual functional capacity the physical and
     mental demands of this work, the Administrative Law Judge asked the vocational
6    expert whether an individual with the claimant's residual functional capacity
     would be able to perform his past relevant work.  The vocational expert testified
7    that given all of these factors the individual would be able to perform [the hand
     bill distributor] job as actually and generally performed in the national economy.
8                Alternatively, the vocational expert testified with the claimant's residual
     functional capacity of medium work, he would be able to perform [the work of a]
9    cashier . . . fast food prep work[er] . . . [and] telemarketer-phone sales[person].

10   AR 26-27.  More particularly, the colloquy regarding the discussion of Plaintiff's past relevant

11   work in this regard occurred as follows:

12                [VE]: How did you get that job?  Did you have a relative?
                 [Plaintiff]: I was just passing out flyers.
13               BY ADMINISTRATIVE LAW JUDGE:
                 Q: All right.  Go ahead.  Go ahead, sir.
14               [VE]: So only the DOT would have one of these kinds of job titles, so here
     it is.  Are you ready for this.
15               Q: Go on.
                 A: It's unskilled, in fact, an SVP: 1.  You never see these.  It's called
16   sandwich board carrier.  Remember sandwich boards?
                 Q: Sandwich - -
17               A: Walk around with a sandwich - -
                 Q: We still see them in my office.
18               A: In Santa Cruz they have them.  They have them in Sacramento
     sometimes.
19               Q:  Sandwich board carrier.
                 A:  Yes.
20               Q: Okay.
                 A: Sandwich board carrier.  The alternate title the DOT has is hand bill
21   distributor, which is flyers.
                 Q: Hand - -
22               A: Bill distributor.
                 HA:  Bill, B-I-L-L?
23               VE: Bill, B-I-L-L.  Hand bill, or flyer distributor.
                 BY ADMINISTRATIVE LAW JUDGE:
24               Q: Okay.  Go ahead.
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

25

26

27

28                                        20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

A: And that number is 299.687-0[1]4.[5]
Q: Okay.
A: Took me 15 minutes to find that one.
Q: You don't get paid extra for that.
A: And that was light work, and it's occasional reaching, handling, and fingering, and insignificant feeling. And no exposure to moving parts to any extent. Okay. So that's all. That's his work history, as I understand it. And I'm not sure because of the - -
VE: - - there's some uncertainty about how long you were at each job, sometimes there's very short period of time, where you're there a couple of months, I think you said. One - - another one was maybe a year. So I'm not sure if he met the SVP level, you know what I mean? So if you needed that, I could look it up.
BY ADMINISTRATIVE LAW JUDGE:
Q: You mean like you don't know if he met the SVP: 1, right?
A: Well, that one, yes, that one's good, but some of the others, like when you have 5, 6, 7 skilled levels, and you don't have the job long enough to learn the skill, then you really don't have that - -
Q: Right.
A: - - so it wouldn't be an SGA.
Q: I'm going to - -
A: The records - -
Q: - - ask a question - -
A: - - were kind of - - the records that I looked at were vastly discrepant. Some said three years, some said - -
Q: Right.
A: - - one year. So - -
Q: Okay.

16   AR 84-86.

17   Here, ALJ Slocum's RFC determination found Plaintiff to be capable of medium work

18   with a limitation to avoid moderate exposure to hazards of working around machinery and

19   heights. AR 23. Therefore, because the ALJ determined Plaintiff was capable of medium work,

20   it is reasonable to infer he compared the medium work to that of the light work Plaintiff

21   previously performed to conclude Plaintiff could in fact perform his past work as a hand bill

22   distributor.

23
24
25

26   [5]A review of the job description for DOT 299.687-014 confirms the light work, occasional reaching,
27   handling, and fingering, and insignificant feeling, no exposure to moving parts, and the SVP and reasoning levels of one. *See* 1991 W3L 672646, DICOT 299.687.014.

28                                          21

1

**Substantial Gainful Activity**

2        Plaintiff specifically asserts that because his past work as a hand bill distributor did not

3   amount to substantial gainful activity, it was error for the ALJ to find him capable of performing

4   his past relevant work.

5        At the administrative hearing, Plaintiff testified that he last worked at "Properties Union

6   passing out flyers" and did so "[f]or a couple months" in 1998.  AR 41.  He quit the position

7   because he became ill with pancreatitis.  AR 42.  The earnings record information available in

8   the administrative record reflects that no wages were earned in 1998.  There are earnings

9   reflected in 1997 for the total sum of $2,140, and then no wages were reported or earned again

10  until 2001, when the record indicates $374.19 was earned.  *See* AR 143-145.

11       Title 20 of the Code of Federal Regulations section 404.1574 provides, in relevant part,

12  as follows:

13           (a) We use several guides to decide whether the work you have done
         shows that you are able to do substantial gainful activity. If you are working or
14       have worked as an employee, we will use the provisions in paragraphs (a) through
         (d) of this section that are relevant to your work activity. We will use these
15       provisions whenever they are appropriate, whether in connection with your
         application for disability benefits (when we make an initial determination on your
16       application and throughout any appeals you may request), after you have become
         entitled to a period of disability or to disability benefits, or both.

17       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
             (c) The unsuccessful work attempt–
18           (1) General. Ordinarily, work you have done will not show that you are
         able to do substantial gainful activity if, after working for a period of 6 months or
19       less, your impairment forced you to stop working or to reduce the amount of work
         you do so that your earnings from such work fall below the substantial gainful
20       activity earnings level in paragraph (b)(2) of this section, and you meet the
         conditions described in paragraphs (c)(2), (3), (4), and (5), of this section. We will
21       use the provisions of this paragraph when we make an initial determination on
         your application for disability benefits and throughout any appeal you may
22       request. Except as set forth in § 404.1592a(a), we will also apply the provisions of
         this paragraph if you are already entitled to disability benefits, when you work and
23       we consider whether the work you are doing is substantial gainful activity or
         demonstrates the ability to do substantial gainful activity.

24

25       After consulting Plaintiff's earnings record as a whole, it appears substantial gainful

26  activity may not exist as to Plaintiff's past work as a hand bill distributor, regardless of when he

27

28                                                    22

may have performed it.  Nevertheless, as pointed out by the Commissioner, alternative positions were identified by the VE that Plaintiff could perform.  As noted above, the VE indicated that Plaintiff could perform the work of a cashier, a fast food prep worker, and a telemarketer or phone sales representative.  *See* AR 90-91.  Plaintiff does not challenge this finding, nor does it appear he could as the positions all fall within the parameters of the ALJ's RFC finding.

In sum, even if the ALJ erred in determining Plaintiff could perform his past relevant work because that work did not amount to substantial gainful activity, any error is harmless. *Batson v. Comm'r Soc. Sec.*, 359 F.3d at 1197 (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion); *see also Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Carlos S. Lopez.


IT IS SO ORDERED.

**Dated:    April 25, 2012          _____/s/ Gary S. Austin_____**
                                          UNITED STATES MAGISTRATE JUDGE